OPINION
{¶ 1} Defendant, Delon Branch, appeals from his conviction and sentence for possession of crack cocaine. For his sole assignment of error, Defendant complains that the trial court erred when it denied his motion to suppress the evidence. *Page 2 
 {¶ 2} In overruling Defendant's motion to suppress the evidence, the trial court found the following facts:
 {¶ 3} "Corporal Phillip Setty is an employee of Moonlight Security Company with one year's experience. Through Moonlight Security, Setty has worked various locations including the Summit Square apartments located in Dayton, Ohio.
 {¶ 4} "Setty testified that he has worked with several other companies in Dayton, although the exact length with each company is unknown. And he received training from the Ohio Peace Officer Training Academy (OPOTA) at Sinclair.
 {¶ 5} "On or about 9:02 p.m. on August 11, 2007, Cpl. Setty and his partner Chris Childers were on routine patrol in Setty's personal car near the main office of the Summit Square apartments. A lot of people hung out at this corner; it was known for illegal drug activity, as well as a place to play dice games.
 {¶ 6} "Setty saw a group of approximately six men on the corner. One of the men was sitting on a lawn chair. Included in this group was a man that Setty recognized from an encounter on the Summit Square property approximately two weeks earlier. Setty testified that he saw this man involved in, what he perceived, an alleged open air drug sale that *Page 3 
occurred within two feet of him.
 {¶ 7} "The alleged drug encounter occurred at the Summit Square apartments after lunch as Setty and his partner were making rounds. Setty noticed a man with an older man in his sixties. The two were standing off the curb and to Setty's left, on the driver's side of his car. Setty noticed that one of the men was holding a baggie with a white substance therein. An exchange occurred within two feet of them. Setty and his partner attempted to apprehend these individuals but they were unsuccessful. No incident report was filed and Setty gave no other testimony of encounters with Branch.
 {¶ 8} "On August 11th, after recognizing Branch as one of the people involved in the suspicious activity from two weeks prior, Setty decided to leave his car and `FI' him. He stated that he wanted to see if Branch was a resident of the apartment complex, and if he was not he would ask him to leave. Setty also wanted to see if the person now known as the Defendant, had been placed on the property's trespass list or if he had any outstanding warrants.
 {¶ 9} "As Setty approached the group of men, Branch separated himself from them and began walking away. The Defendant walked with increasing speed until he was running. Setty followed ordering Branch to stop. Branch ignored the *Page 4 
commands and continued running until he was stopped by a fence that was a separating the apartments from some woods.
 {¶ 10} "When Setty caught up to Branch, the Defendant had his hands in his pockets. Setty ordered Branch to remove his hands from his pockets. Branch responded, `No we are not doing this.' As Setty approached Branch, Branch pulled back his fist and attempted to punch Setty. Setty removed a canister of pepper spray from his utility belt and gave Branch `a one second' burst of spray.
 {¶ 11} "This burst of pepper seemed to have no effect upon the Defendant. He ran past Setty and toward the front of the complex.
 {¶ 12} "However, the Defendant did not run too far before falling on his face. Setty ran up to Branch who was on his stomach in a prone position. Setty again ordered Branch to remove his hands from his pockets. When Branch removed his hands he produced a clear baggie with a white substance in rock form from his pocket. He also produced a razor blade that had a white substance on the blade. In his right hand was a small pocket knife in the closed position. Setty also observed two batteries that appeared to have come from a small plastic scale.
 {¶ 13} "After Branch emptied his pockets, Setty called out *Page 5 
to several residents to get some water to rinse out Branch's eyes Subsequent checks showed that Branch did not live in the complex and he was placed on the trespass list.
 {¶ 14} "Officer Stack testified that she is an employee of the City of Dayton's Police Department assigned to the Third District. Officer Stack was called to the Summit Square apartments to take control of the Defendant from Fifth District officers. Upon getting control of the Defendant, she placed handcuffs on him and gave him Miranda rights warnings. He acknowledged he understood those rights but began asking questions of her prior to waiving those rights. Officer Stack readvised him of those rights. Then Branch then acknowledged receiving those rights, waived them and then began telling her what happened."
 {¶ 15} Defendant was indicted on one count of possession of crack cocaine in an amount between five and ten grams, R.C. 2925.11(A), a felony of the third degree. Defendant filed a motion to suppress evidence, arguing that no reasonable suspicion of criminal activity existed to justify Setty's stop and detention of Defendant. Following a hearing the trial court overruled Defendant's motion to suppress. Defendant proceeded to trial and was found guilty by a jury. The trial court sentenced Defendant to a three year prison term. *Page 6 
 {¶ 16} Defendant timely appealed to this court from his conviction and sentence. He challenges only the trial court's decision overruling his motion to suppress the evidence.
ASSIGNMENT OF ERROR
 {¶ 17} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE OBTAINED AGAINST APPELLANT IN VIOLATION OF HIS FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCH AND SEIZURE."
 {¶ 18} Defendant argues that his Fourth Amendment rights were violated in this case because Setty lacked the reasonable suspicion of criminal activity necessary to justify an investigative stop and detention of Defendant under Terry v. Ohio (1968), 382 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889.
 {¶ 19} In a motion to suppress, the trial court assumes the role of the trier of fact, and as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses.State v. Clay (1972), 34 Ohio St.2d 250. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. State v. Retherford (1994), *Page 7 93 Ohio App.3d 586; State v. Satterwhite (1997), 123 Ohio App.3d 322.
 {¶ 20} Defendant argues that, Setty's private employment notwithstanding, Setty functioned as a "state actor" for purposes of the Fourth Amendment in his encounter with Defendant, and the trial court therefore erred when it denied Defendant's motion to suppress evidence obtained as a result of the ensuing search and seizure because it was unreasonable under Fourth Amendment standards and therefore illegal.
 {¶ 21} The Fourth Amendment protection against unreasonable searches and seizures regulates conduct by government officials, not private citizens, and courts routinely decline to exclude evidence which is obtained by private citizens. Burdeau v. McDowell (1921), 256 U.S. 465,41 S.Ct. 574, 65 L.Ed, 1048; State v. Ingram (June 14, 1993), Montgomery App. No. 13508. If a private citizen is acting as an agent of the police, however, the result is different. Participation by government officers in the planning or implementation of a private citizen's efforts to secure evidence may taint the operation sufficiently as to require suppression of the evidence. Ingram. The test of government participation is whether under all the circumstances the private citizen must be regarded as an agent or instrument of the State. Id. The *Page 8 
relevant inquiry is: what was the purpose of the conduct in which the actor engaged?
 {¶ 22} Defendant's "state actor" contention is a red herring. The trial court did not address the issue, and a finding that Setty was a state actor, as Defendant argues, would in and of itself offer no reason to grant Defendant's motion to suppress. The court instead analyzed the issues of law presented as though Setty functioned as a state actor in his encounter with Defendant; and found no Fourth Amendment violation. Our review will be of that finding.
 {¶ 23} Setty's purpose when he approached Defendant was to determine whether Defendant was a resident of the apartment complex and to order Defendant off the property if he did not belong there. Setty's particular concern was the illegal drug transaction in which Defendant was involved and that Setty had witnessed two weeks earlier. The illegal character of that prior event notwithstanding, nothing in the action Setty took in approaching Defendant as he did and for the purpose he did constitutes a search or seizure. It was, as the trial court found, merely a consensual encounter with a person for the purpose of obtaining information, and involved neither a use of physical force nor a show of authority that restrained Defendant of his liberty to walk away.State v. Taylor *Page 9 
(1995), 106 Ohio App.3d 741. Therefore, Defendant's Fourth Amendment rights were not implicated by Setty's action in approaching Defendant as he did. Id.
 {¶ 24} Defendant exercised his right to walk away, but then walked with increasing speed until he was in fact running. Setty ordered Defendant to stop, and gave chase when Defendant continued to run away. Setty's conduct, being a restraint on Defendant's liberty, was subject to the reasonable and articulable suspicion of criminal conduct standard that Terry imposes. Relying on Illinois v. Wardlow (2000), 528 U.S. 119,120 S.Ct. 673, 145 L.Ed.2d 570, and State v. Jordan (2004),104 Ohio St.3d 21, the court reasoned that Defendant's unprovoked and headlong flight was sufficiently suggestive of wrongdoing to satisfyTerry and authorize Setty to act as he did. We agree.
 {¶ 25} When Setty caught up with Defendant, Setty ordered Defendant to remove his hands from his pockets. Defendant refused and attempted to strike Setty. Defendant ran off, but fell to the ground, probably as a result of the pepper spray Setty had used when Defendant attempted to strike him. Setty again ordered Defendant to remove his hands from his pockets. When Defendant did, he also produced what reasonably appeared to be cocaine. Setty handcuffed Defendant and detained him *Page 10 
until police arrived. If Setty functioned as a state actor, as Defendant argues, his conduct was well within the authority that Terry confers on state actors to stop and detain a person reasonably suspected of criminal activity without violating the person's Fourth Amendment rights.
 {¶ 26} Defendant's assignment of error is overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J. And DONOVAN, J., concur.
Copies mailed to:
Michele D. Phipps, Esq.
Jeremiah J. Denslow, Esq.
 Hon. Frances E. McGee *Page 1